UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERAS CARGO TRANSPORT (AMERICA), LLC,

    Plaintiff,

v.

CAL DIVE INTERNATIONAL (AUSTRALIA) PTY LTD.,

    Defendant.

Case No. 15-cv-03566-JSC

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 13

Plaintiff Teras Cargo Transport (America), LLC ("Teras Cargo") brings this action against Defendant Cal Dive International (Australia) Pty Ltd. ("Cal Dive Australia") for breach of a maritime contract. (Dkt. No. 1.) Pursuant to the contract, Teras Cargo chartered the vessel Teras Sunrise to Cal Dive Australia. In the First Amended Complaint ("FAC"), Teras Cargo alleges that Cal Dive Australia owes over $800,000 in outstanding contractual obligations. Cal Dive Australia now moves to dismiss the FAC for lack of personal jurisdiction and improper venue. (Dkt. No. 13.) Having considered the parties' submissions, and having had the benefit of oral argument on October 8, 2015, the Court concludes that Teras Cargo has not made a prima facie showing of personal jurisdiction over Cal Dive Australia. Because Cal Dive Australia admits that it is subject to personal jurisdiction in Texas, the federal long-arm statute does not apply. *See Holland Am. Line Inc v. Wartsila North America, Inc.,* 485 F.3d 450, 461 (9th Cir. 2006). And Cal Dive Australia did not have sufficient contacts with California to justify the exercise of specific or general jurisdiction. Finally, as Teras Cargo can do no more than speculate that Cal Dive Australia might have contacts sufficient with California to confer personal jurisdiction, it is not entitled to jurisdictional discovery. This dispute must be litigated elsewhere.

**BACKGROUND**

**A.      First Amended Complaint Allegations[1]**

On April 15, 2015, the parties entered a contract titled Master Marine Services Agreement CDIA-MMSA-2015-001 (hereinafter "MMSA"). (Dkt. No. 7 ¶ 6; *see also* Dkt. No. 13-1.) Pursuant and subject to the MMSA, the parties also executed three "Vessel Charter Orders" whereby Cal Dive Australia agreed to charter the ocean vessel Teras Sunrise. (Dkt. No. 7 ¶ 5; *see also* Dkt. No. 13-1 ¶ 9.)

The MMSA provides terms and conditions governing Cal Dive Australia's potential charter of any of Teras Cargo's vessels. (*Id.* ¶ 6.) On this point, the MMSA provides, in relevant part, that "Contractor [Cal Dive Australia] shall pay Owner [Teras Cargo] the Hire rate per day or hour agreed to in the Charter Order[,]" that "Owner shall bill Contractor monthly . . . and Contractor shall pay to Owner within Thirty Five (35) days after receipt of invoice . . . the undisputed amount of the bill." (*Id.*; *see also* Dkt. No. 13-1 at 12.)[2] The MMSA further provides that if Cal Dive Australia disputes any part of the bill, it must provide "a full written explanation for the withholding" at the time the payment becomes due. (Dkt. No. 7 ¶ 6; Dkt. No. 13-1 at 12.) Teras Cargo must respond in writing within five days, then "Senior Management of both Contractor and Owner . . . shall meet . . . for the purpose of good faith resolution of the dispute." (Dkt. No. 7 ¶ 6; Dkt. No. 13-1 at 12.) The MMSA also provides that Western Australian law will govern all disputes arising out of the contract. (Dkt. No. 13-1 at 26 ("This agreement shall be governed and construed in accordance with the laws of Western Australia[.]").)

Teras Cargo chartered the Teras Sunrise to Cal Dive Australia pursuant to the MMSA and Vessel Charter Orders, and Cal Dive Australia failed to pay the entire amounts of charter hire, third party vendor charges and agreed markups, a lump sum demobilization fee of $3,000,000, and other amounts due under the terms of those contracts. (Dkt. No. 7 ¶¶ 8-9.)

---

[1] Except where otherwise noted, the following facts are taken from the FAC.

[2] Page numbers throughout refer to those that the Court's electronic filing system automatically assign.

**B.      Jurisdictional Allegations**[3]

Teras Cargo is a limited liability company organized under the laws of the State of Delaware.  (Dkt. No. 7 ¶ 3.)  Teras Cargo's corporate office in the United States is located in Gig Harbor, Washington.  (Dkt. No. 13-1 ¶ 5.)

Cal Dive Australia is a business organized under Australian law.  (*Id.* ¶ 4.)  Cal Dive Australia does not have any offices in the United States.  (Dkt. No. 13-1 ¶ 4.)  The company is neither domiciled in California nor registered as a business entity in the state.  (*Id.* ¶ 19.)  Cal Dive Australia does not solicit business in California or have any employees or company representatives in the state.  (*Id.* ¶¶ 20-21.)

Cal Dive Australia is now either known as and/or wholly owned by Shelf Subsea Services Pte. Ltd. ("Shelf Subsea"), a Singapore entity.  (*See id.* ¶ 2 (Cal Dive Australia is now known as "Shelf Subsea Pty. Ltd."); Dkt. No. 13 at 8 (Cal Dive Australia is now "wholly owned by Shelf Subsea Services Pte. Ltd., a Singapore entity"); Dkt. No. 11 at 2 (disclosing Shelf Subsea as the parent corporation).)  Cal Dive Australia's ultimate parent company during the period at issue was Cal Dive International, Inc. ("Cal Dive International"), a Delaware corporation with its principal place of business in Houston, Texas.  (*Id.* ¶¶ 2-3.)

Mark Stich, General Counsel for Cal Dive International, avers that the parties' negotiations over the MMSA occurred between Cal Dive Australia's personnel in Australia, Cal Dive International staff in Texas, and Teras Cargo employees in Washington State.  (Dkt. No. 13-1 ¶ 10.)  During the negotiations Mr. Stich repeatedly represented that he was operating on Cal Dive Australia's behalf and at least some of his correspondence used Cal Dive Australia letterhead.  (Dkt. No. 20-1 at 28-39.)  However, Mr. Stich also declares that the contract negotiations involved Teras Cargo's in-house counsel who resides in Northern California.  (Dkt. No. 13-1 ¶ 17.)  From Mr. Stich's perspective, this connection involved only a few emails sent and received from in-house counsel's personal residence.  (*Id.*)  Teras Cargo's in-house counsel, Tim Lord, avers that he

---

[3] The following facts are taken from the FAC along with certain affidavits and documentary evidence submitted in support of, and in opposition to, Teras Cargo's motion to dismiss for lack of personal jurisdiction.

3

has worked for the past five years at a Teras Cargo office in Marin County, and that he was tasked with negotiating the MMSA and Vessel Charter Orders on Teras Cargo's behalf, which he did from that office. (Dkt. No. 20 ¶¶ 3-5.) At the close of negotiations, John Abadie signed the contract on behalf of Cal Dive Australia. (*Id.* ¶ 4.) Mr. Abadie is Cal Dive International's Executive Vice President and Chief Operating Officer since 2011, and is located in Houston, Texas. (*See* Dkt. No. 19-1 at 2, 4.) Teras Cargo's CEO signed the contract in Washington state. (Dkt. No. 20 ¶ 4.) A number of Cal Dive Australia or Cal Dive International employees based at least in part in Texas, including Mr. Stich, were included on emails during the course of both initial contract negotiations and discussions once the disputes arose. (*See* Dkt. No. 20 ¶ 6; Dkt. No. 20-1 at 28-58; Dkt. No. 19-1 at 2, 7; Dkt. No. 19-2 at 2, 5, 8.) Mr. Lord, from his office in Marin County, was heavily involved in discussions regarding attempts to resolve disputes over Teras Cargo's performance once they arose. (Dkt. No. 20 ¶¶ 3-5.)

The vessel operations and acts that give rise to Teras Cargo's claim for breach of charter party occurred largely in Australia. (Dkt. No. 13-1 ¶¶ 10-16.) Some disputes stem from actions involving the vessel in Singapore, as well. (Dkt. No. 20-1 at 30-40.) The vessel operations themselves involved work in Australia for Cal Dive Australia's client, Chevron. (Dkt. No. 20-1 at 32.) With respect to the invoices underlying the dispute, Stich avers that billing related to the MMSA was done in Australia. (Dkt. No. 13-1 ¶ 14.) On the other hand, billing records indicate that Cal Dive's payments were sent to a bank in the United States—specifically, Minnesota. (Dkt. No. 20-1 at 24.)

Aside from Cal Dive Australia's activities arising from the contract at issue here, Teras Cargo identifies further Cal Dive Australia activities in the United States: Cal Dive Australia was sold through Cal Dive International's bankruptcy proceedings in Delaware. (Dkt. No. 19-2 at 12-32.) Those proceedings indicated that the company was purchased according to Delaware law, the sale closed in Texas, and involved data capacity services in Texas. (Dkt. No. 19-3 at 31; Dkt. No. 19-4.)

C. **Procedural History**

Teras Cargo initiated this action on August 3, 2015 with the filing of the complaint for

4

damages. (Dkt. No. 1.) It then filed the FAC, in which it alleges that this action is properly in federal court as an admiralty and maritime claim under 28 U.S.C. § 1333(1) or, in the alternative, diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. No. 7 ¶ 1.) Plaintiff alleges that "[a] substantial amount of events relevant to the case occurred in Marin County, and it is therefore properly assigned to the San Francisco or Oakland divisions of this Court." (*Id.* ¶ 2.) Teras Cargo contends that Cal Dive Australia breached the parties' contract and owes more than $5,189,551.49 including outstanding charter hire, third party vendor charges and agreed markups, and a lump sum demobilization fee of $3,000,000 pursuant to the parties' vessel charter order and the MMSA. (*Id.* ¶¶ 1, 9.)

Cal Dive Australia now moves to dismiss the FAC for lack of personal jurisdiction and improper venue, urging that the sole jurisdictional hook to the Northern District of California is a few emails that Teras Cargo's general counsel sent from his residence in Marin County.[4] (Dkt. No. 13.) Teras Cargo, for its part, urges that the Court can exercise both specific and general personal jurisdiction over Cal Dive Australia based on its activities in the United States in general. The Court heard oral argument on October 8, 2015.

## DISCUSSION

Courts typically consider challenges to personal jurisdiction before considering the question of venue. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). The Court will do so here.

**A.     Motion to Dismiss for Lack of Personal Jurisdiction**

1.     Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the

---

[4] Cal Dive Australia also makes a reference to dismissal on grounds of forum non conveniens. (Dkt. No. 13 at 16.) "In dismissing an action on forum non convenien*s* grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (quotation marks and citations omitted). The court must also make a choice of law determination as part of this analysis. *Id.* (citation omitted). The defendant bears the burden of showing these two factors weigh in favor of dismissal. *Id.* at 1143 (quotation marks and citation omitted). Cal Dive Australia does not address either prong of the analysis. (Dkt. No. 13 at 16-17.) Thus, the Court construes it to move only on grounds of improper venue, not forum non conveniens.

burden of demonstrating that the court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). "Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*, 2:13-CV-07086-CAS, 2014 WL 1682811, at *2 (C.D. Cal. Apr. 29, 2014). A trial court may rule on the issue of personal jurisdiction by "relying on affidavits and discovery materials without holding an evidentiary hearing," though "dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). In other words, in such cases, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Moreover, "for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute has the same due process requirements as the federal long-arm statute. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). The Due Process Clause requires that nonresident defendants have "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

    2.    <u>Analysis</u>

        a.    *Federal Long-Arm Statute*

Teras Cargo first invokes Federal Rule of Civil Procedure 4(k)(2), the nationwide jurisdiction provision, known as the federal long-arm statute. The Rule provides that, "[f]or a

claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  This Rule "authorizes jurisdiction based on a defendant's *national contacts*" instead of solely contacts in the forum state.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002).  Rule 4(k)(2) requires the plaintiff to prove three factors: "(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of *any* state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process."  *Id.*

With respect to the first factor, the claims here are for breach of a maritime contract, which are considered disputes arising under "federal law" for the purposes of Rule 4(k)(2).  *See Holland Am. Line Inc. v. Wartsila No. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (noting that admiralty cases arise under federal law for the purposes of Rule 4(k)(2)); *Ali v. Rogers*, 780 F.3d 1229, 1235 (9th Cir. 2015) ("[I]t is well settled that 'a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction.'") (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)); *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024 (9th Cir. 2001) (noting that courts have admiralty jurisdiction over a contract "if its subject matter is maritime") (citation omitted); *see, e.g.*, *Interocean S.S. Corp. v. Amelco Eng'rs Co.*, 341 F. Supp. 995, 997-98 (N.D. Cal. 1971) (a contract for charter hire is maritime in nature). Thus, the first factor is met.

But the second factor is not.  The second requires that the "defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction[.]"  *Glencore Grain Rotterdam B.V.*, 284 F.3d at 1126.  "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed[,]" which "amount[s] to a consent to personal jurisdiction there."  *Holland Am. Line Inc.*, 485 F.3d at 461 (citation omitted); *see also Touchcome Inc. v. Bereksin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) ("[T]he purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have

brought suit."). Cal Dive Australia concedes that it is subject to personal jurisdiction in Texas.[5] (Dkt. No. 22 at 7.) This is enough to preclude application of nationwide jurisdiction under Rule 4(k)(2). *See Holland Am. Line Inc.*, 485 F.3d at 461. Thus, personal jurisdiction is proper in this Court only if Cal Dive Australia has sufficient contacts with California.

    b. *Specific Jurisdiction*

  The Ninth Circuit employs a three-prong "Minimum Contact Test" to determine whether a party has sufficient minimum contacts to be susceptible to personal jurisdiction:

> 1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum, or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802; *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977). The plaintiff bears the burden of satisfying the first two prongs of this test. *Id.* If the plaintiff satisfies this burden, the burden shifts to the defendant to make a "compelling case" that the third prong—the exercise of jurisdiction is reasonable—is not met. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co.*, 453 F.3d at 1155 (internal citations and quotations omitted). For purposes of personal jurisdiction, the actions of an agent are attributable to the principal. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977).

  The first prong of the minimum contact test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral

---

[5] Cal Dive Australia did not concede jurisdiction in Texas until its reply. While normally the Court does not consider positions taken for the first time in a reply brief, it is the plaintiff's burden to establish personal jurisdiction. The FAC implies personal jurisdiction based on Cal Dive Australia's connection with California. (*See* Dkt. No. 7 ¶ 2 (referring to events that occurred in Marin County).) Teras Cargo raised nationwide jurisdiction under Rule 4(k)(2) for the first time in its opposition to the motion to dismiss. Thus, Cal Dive Australia's concession of jurisdiction in Texas in reply is appropriate and timely.

activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal citations and quotations omitted). A plaintiff may satisfy this prong by showing either purposeful availment or purposeful direction. *Pebble Beach*, 453 F.3d at 1155. "For suits sounding in contract, courts typically apply the purposeful availment test, which asks whether the defendant has performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1178 (N.D. Cal. 2015) (internal quotation marks and citation omitted); *see also Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions *in* the forum, such as executing or performing a contract there."). As Teras Cargo's claims are for breach of contract, the Court applies the purposeful availment test.

The Court considers "whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract[,]" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal quotation marks, brackets, and citation omitted), and if the defendant "has created continuing obligations to forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (N.D. Cal. 1995). Courts applying a purposeful availment analysis examine whether a defendant's contacts with the forum are attributable to its own actions, or are solely attributable to the action of the plaintiff; and whether the defendant performed affirmative conduct to promote the transaction of business within the forum. *See Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (1988).

Cal Dive Australia has not purposefully availed itself of doing business in California. The foundation of Teras Cargo's insistence that that there is personal jurisdiction over Cal Dive Australia is based on the location of Teras Cargo's own general counsel, and that individual's involvement in contract negotiations. While an attorney based in California was involved in negotiating on Teras Cargo's behalf, his involvement is a product of Teras Cargo's own actions and not Cal Dive Australia's affirmative conduct in reaching out to avail itself of the privilege of doing business in this state. *See Sinatra*, 854 F.2d at 1195. While Teras Cargo urges that its

general counsel negotiated the contract from a California-based office, its website lists no office in Marin County or elsewhere in California, nor does its page about its general counsel, Tim Lord, even suggest that he is based in an office there. (*See* Dkt. No. 23 at 4, 10.) Moreover, it appears that until Teras Cargo filed its opposition to the instant motion to dismiss disclosing the existence of a Marin County office for Mr. Lord (Dkt. No. 20 ¶ 3), Cal Dive Australia believed that Mr. Lord was based out of Teras Cargo's Washington office but engaged in some negotiations from his personal residence in Marin County. (*See* Dkt. No. 13-1 ¶ 17.) Indeed, Cal Dive Australia's correspondence to Mr. Lord is addressed to him at Teras Cargo's Washington State address. (Dkt. No. 20-1 at 32.) Based on the record before the Court, Teras Cargo has not made a prima facie showing that Cal Dive Australia was even aware that Mr. Lord worked in a Teras Cargo office in Marin County.

But even if Cal Dive Australia was aware that Mr. Lord's office was located in California, the mere fact that a California-based individual was involved in contract negotiations and discussions once the dispute arose does not rise to the level of purposeful availment. The Ninth Circuit has long concluded that "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (quotation marks omitted). So it is here. Aside from Mr. Lord's involvement and communications from California, all negotiations, execution, and intended effects of the contract occurred outside of this state. Indeed, an officer from Teras Cargo's Washington state-based office signed on the company's behalf. Nor has Teras Cargo shown that Cal Dive Australia created any continuing obligations in California. To the contrary, the contract created an ongoing obligation with a Washington state entity for conduct to occur abroad. Thus, the contract itself does not establish personal jurisdiction over Cal Dive Australia in California, as it was executed and created continuing obligations outside of the forum state.

Teras Cargo's assertion that the contract was meant to assist Cal Dive Australia in performing work for Chevron, a "California-based oil giant" (Dkt. No. 18 at 7), is unpersuasive. First, the work was to be performed in Australia. Second, the MMSA itself does not reference

Chevron or create any contractual obligations with Chevron. The contract at issue here is not Cal Dive Australia's contract with Chevron, if such exists; instead, it is a contract with a Washington State company for work to be performed outside the United States.

In short, where, as here, an out-of-state defendant negotiates a contract with the out-of-state plaintiff's employee in California but the contract itself does not contemplate performance in this state, there is no purposeful availment. *See, e.g.*, *Applies Underwriters, Inc. v. Combined Mgmt., Inc.*, 371 F. App'x 834, 835 (9th Cir. 2010). Because Teras Cargo has not met its burden of making a prima facie showing of the first two factors, the inquiry ends there and the Court cannot exercise specific jurisdiction over Cal Dive Australia. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

        c.     *General Jurisdiction*

Nor is there general jurisdiction over Cal Dive Australia in California. For general jurisdiction to exist over a nonresident defendant, the defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that "approximate physical presence" in the forum state, *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), and render the company "essentially at home" there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014) (citation omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801; *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite defendants' significant contacts with forum). In other words, the threshold level of contacts required for general jurisdiction is even higher than is required for specific jurisdiction.

Here, Teras Cargo does not even argue that Cal Dive Australia's contacts in California are so continuous and systematic that an exercise of general jurisdiction is appropriate; instead, it argues for general jurisdiction in the United States based on Cal Dive Australia's nationwide presence, focusing largely on its employees' conduct in Texas. (*See* Dkt. No. 18 at 17.) Because,

11

as explained above, Cal Dive Australia has conceded that it is subject to personal jurisdiction in Texas, the federal long-arm statute does not apply. In any event, a sole instance of Cal Dive Australia's negotiations with a California-based lawyer to enter a contract with a Washington-based company for obligations to be performed abroad do not rise to the level of continuous and systematic business dealings in California sufficient to exercise general jurisdiction either. Nor does Teras Cargo's reference to Cal Dive Australia's relationship with Chevron render Cal Dive Australia likely to be "essentially at home" in this state. *See Daimler AG*, 134 S. Ct. at 749. Thus, the Court cannot exercise general jurisdiction over Cal Dive Australia.

### 3. Teras Cargo's Request for Jurisdictional Discovery

Teras Cargo requests jurisdictional discovery in the event that the Court determines that Cal Dive Australia's contacts, in the present record, are insufficient to establish specific personal jurisdiction. (Dkt. No. 18 at 17.) "A district court is vested with broad discretion to permit or deny jurisdictional discovery." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Such discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (quotation marks and citation omitted); *see also Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (noting that it is not an abuse of discretion to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction") (citation omitted). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts," *Boschetto*, 539 F.3d at 1020, or more than "bare allegations in the face of specific denials." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted). In *Laub*, the Ninth Circuit reversed the district court's denial of jurisdictional discovery where there was a "reasonable probability" that the outcome of the motion would be different if discovery were permitted. 342 F.3d at 1093.

In light of *Laub*, courts in this District have held that a plaintiff need not establish a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery. *See, e.g.*, *Corcera Solutions, LLC v. Razor, Inc.*, No. 5:13-cv-05113-PG, 2014 WL 587869, at *3 & n.26 (N.D. Cal.

Feb. 14, 2014); *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-06038-CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (citation omitted); *Focht v. Sol Melia S.A.*, No. C-10-0906 EMC, 2010 WL 3155826, at *2 (N.D. Cal. Aug. 9, 2010); *see also eMag Solutions, LLC v. Toda Kogyo Corp.*, No. C 02-1611 PJH, 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006) (noting that it would be "counterintuitive to require a plaintiff, *prior to* conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss") (emphasis in original) (quotation marks and citation omitted). A plaintiff need only make out a "colorable basis" for jurisdiction, or "some evidence" that makes out some lesser showing than a prima facie case. *Calix Networks, Inc.*, 2010 WL 3515759, at *4 (citations omitted).

Here, there is insufficient evidence to give rise to more than a "hunch" that jurisdictional discovery might assist Teras Cargo in making out a case for personal jurisdiction over Cal Dive Australia. Teras Cargo offers two broad theories for potential personal jurisdiction: Cal Dive Australia's contacts with the United States; and the contacts of Shelf Subsea—which is referred to in contradictory terms in Cal Dive Australia's briefing as either the entity's new name or its parent company. (*See* Dkt. No. 13-1 ¶ 2; Dkt. No. 13 at 8.) With respect to the first theory, the Court has already rejected the nationwide-contacts test. And to the extent the inquiry is instead focused on Cal Dive Australia's contacts in California, Teras Cargo offers nothing more than the vague suggestion that there might be more contacts than those meager contacts already identified. Thus, Teras Cargo offers no "colorable basis" for jurisdictional discovery based on Cal Dive Australia's further contacts in California beyond those already identified in the record.

Teras Cargo's second theory is equally unavailing. While the contacts of Shelf Subsea may be relevant to whether the Court can exercise personal jurisdiction over Cal Dive Australia, Teras Cargo has offered no evidence to suggest that Shelf Subsea has contacts in California that create a colorable basis for jurisdiction. To the contrary, all Teras Cargo offers is the sweeping assertion that jurisdictional discovery would allow it to learn what contacts Shelf Subsea has in California. (Dkt. No. 18 at 18.) To the extent that this broad question can be construed as a speculation that Shelf Subsea has contacts in California, the speculation "cannot rise above the 'mere hunch' bar that the Ninth Circuit requires cleared to obtain jurisdictional discovery."

13

*Cocera Solutions, LLC*, 2014 WL 587869, at *3. The Court therefore denies Teras Cargo's request for jurisdictional discovery.

B.     **Motion to Dismiss for Improper Venue**

Cal Dive Australia also moves to dismiss for improper venue. Teras Cargo, for its part, urges that venue is proper here based on its general counsel's involvement in the negotiations, which means that a "substantial part of the events or omissions giving rise to the claim occurred[.]"[6] 28 U.S.C. § 1391(b)(2). In the alternative, Teras Cargo requests transfer to a venue in Washington. (Dkt. No. 18 at 20.) The Court construes Teras Cargo as requesting transfer to the Western District of Washington, which includes the county in which its Gig Harbor corporate office is located.

In light of its conclusion that there is no personal jurisdiction over Cal Dive Australia, the Court could find the defendant's venue challenge to be moot. *See, e.g.*, *NuVasive, Inc. v. Renaissance Surgical Ctr. No., L.P.*, No. 11-CV-00765 BEN MDD, 2011 WL 3021896, at *5 (S.D. Cal. July 22, 2011). On the other hand, the Court retains discretion to transfer to a different district court under the venue transfer provisions. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of 28 U.S.C. § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not."); *Nelson v. Int'l Pain Co.*, 716 F.2d 640, 643 (9th Cir. 1983); *see also Toyz, Inc. v. Wireless Toyz, Inc.*, No. C 09-05091 JF (HRL), 2010 WL 334475, at *11 (N.D. Cal. Jan. 25, 2010) ("When the district court lacks personal jurisdiction over [defendants], . . . transfer pursuant to 28 U.S.C. § 1406(a) is appropriate.") (citation omitted); *see, e.g.*, *Sys. Am., Inc. v. Providential Bancorp, Ltd.*, No. C-04-05134 JF, 2005 WL 757553, at *1 (N.D. Cal. Apr. 4, 2005). The Court has authority to transfer this case to a different district because it has subject matter jurisdiction over the claims alleged. *See Hernandez v. Campbell*, 204 F.3d 861, 865 n.6 (9th Cir. 2000) ("Section 1406(a) only allows transfer where the first court has subject matter jurisdiction over the

---

[6] Given the Court's conclusion that there is no personal jurisdiction over Cal Dive Australia, the Court rejects Teras Cargo's argument that venue is proper in this District under 28 U.S.C. § 1391(b)(3), which allows for venue in a district in which "any defendant is subject to the court's personal jurisdiction[.]"

action."). And indeed, venue generally is improper where the court lacks personal jurisdiction over the defendant, *see PokitDok, Inc. v. Martin*, No. C 12-3947 SI, 2012 WL 5425615, at *4 (N.D. Cal. Nov. 6, 2012), and this is particularly true in admiralty cases, where venue is proper based on personal jurisdiction alone. *See Dunn v. Hatch*, No. C14-01541-JPD, 2015 WL 5080483, at *2 (W.D. Wash. Aug. 27, 2015); *Schatek v. Tsui*, No. CIV 2:10-cv-1562-GEB-JFM (PS), 2010 WL 5169006, at *1 (E.D. Cal. Dec. 14, 2010) (venue in an in personam admiralty action is proper wherever the defendant can be served) (citation omitted). Thus, Teras Cargo has failed to meet its burden of establishing that venue lies in this District.

In the event that the Court concludes that venue is improper, Teras Cargo seeks transfer to the Western District of Washington. To transfer the case to that district, the Court must conclude that venue is proper there. *See* 28 U.S.C. § 1406(a) (noting that the court may transfer the case "to any district or division in which it could have been brought"). Teras Cargo does not address whether venue is proper in the Western District of Washington. Moreover, both parties may have applied the wrong standard to determine where venue is proper: admiralty suits are not "civil suits" within the meaning of general venue statutes, and therefore 28 U.S.C. § 1391 arguably does not control. *See Lewis v. United States*, No. C 04-1834 PJH, 2004 WL 2757931, at *1 (N.D. Cal. Dec. 2, 2004); *see also Dunn*, 2015 WL 5080483, at *2 (citations omitted). Thus, the parties' reliance on Section 1391's provision that venue is proper where a "substantial part of the events or omissions giving rise to the claim occurred" is likely misplaced.[7] *Id.* Instead, as stated above, venue in an in personam admiralty action is proper wherever the court has jurisdiction over the parties. *See, e.g.*, *Dunn*, 2015 WL 5080483, at *1 (citation omitted); *Schatek*, 2010 WL 5169006, at *1 (citation omitted). Cal Dive Australia has conceded that venue is proper in Texas by virtue of its concession that it is subject to personal jurisdiction in that state. *See Dunn*, 2015 WL 5080483, at *1 (citation omitted); *Schatek*, 2010 WL 5169006, at *1 (citation omitted). Teras Cargo has not argued, let alone established, that venue is proper in Washington under this

---

[7] While in the alternative Teras Cargo alleges diversity jurisdiction, it has not established the parties are diverse given that it is an LLC and does not allege the citizenship of each of its members. *See Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006).

15

standard.

The Court will either transfer this case to Texas, where Cal Dive Australia concedes it is subject to personal jurisdiction, or dismiss. It will not transfer to Washington because Teras Cargo has made no showing that Cal Dive Australia is subject to personal jurisdiction there and it makes more sense for a Washington court to decide personal jurisdiction in Washington in the first instance. Accordingly, on or before October 22, 2015, Teras Cargo shall advise the Court in writing as to whether it seeks transfer to Houston, Texas. If it does not, the case will be dismissed. If it does, on or before October 29, 2015 Cal Dive Australia may file a submission, if it wishes, as to why the Court should not exercise its discretion to transfer this action to Texas.

## CONCLUSION

For the reasons described above, the Court GRANTS IN PART Teras Cargo's motion. Specifically, the Court concludes that Cal Dive Australia is not subject to specific or general jurisdiction in California and that the federal long-arm statute does not apply. The Court denies Teras Cargo's request for jurisdictional discovery. The Court withholds ruling on Teras Cargo's motion to dismiss for improper venue to allow the parties to file further submissions regarding whether the case should be dismissed or transferred and, if so, where as set forth above. Teras Cargo's failure to file a supplemental submission by October 29, 2015 will be construed as concession that dismissal rather than transfer is appropriate.

**IT IS SO ORDERED.**

Dated: October 16, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge